**RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.**

[103 N.C. App. 527 (1991)]

POLLY A. RECTOR, MICHAEL E. CRANFORD, PETITIONERS-APPELLEES v. NORTH CAROLINA SHERIFFS' EDUCATION AND TRAINING STANDARDS COMMISSION, RESPONDENT-APPELLANT

No. 9021SC1134

(Filed 6 August 1991)

**1. Sheriffs and Constables § 2 (NCI3d) — handicapped trainees — certification denied — arbitrary and capricious**

The decision of the North Carolina Sheriffs' Education and Training Standards Commission not to certify petitioners was not supported by substantial evidence and was arbitrary and capricious where one petitioner was paralyzed in both legs and used two crutches for walking and the other was paralyzed in one leg and used one crutch for walking; both petitioners attended Basic Law Enforcement Training at Forsyth Technical Institute; the post-delivery report by the Assistant Administrator of the course listed petitioners as successfully completing the course; the school director, Mr. Jones, signed the report and sent it to the Criminal Justice Standards Division; the Area Coordinator of the North Carolina Department of Community Colleges telephoned Mr. Jones and questioned him concerning the inclusion of petitioners in the report; Mr. Jones then telephoned the Criminal Justice Standards Division and requested the return of the report; and Mr. Jones upon receiving the report struck through petitioners' names and returned it to the Criminal Justice Standards Commission. Although the instructors' evaluations were his only source of information concerning the petitioners' actual performance in the course, Mr. Jones based his decision on the advice of the Area Coordinator, Mr. Rector, and on his observations of petitioners' physical characteristics and his personal opinions.

**Am Jur 2d, Sheriffs, Police, and Constables § 10.**

**2. Sheriffs and Constables § 2 (NCI3d) — handicapped trainees — certification denied — sufficiency of evidence**

The North Carolina Sheriffs' Education and Training Standards Commission erred by finding that the assistant course administrator of a Basic Law Enforcement Training course, Mr. Phipps, had concluded that the handicapped petitioners were not proficient in certain areas where Mr. Phipps testified that he did not make any special effort to see how the course

was being conducted or how petitioners were performing and that he had left that to the certified instructors, Mr. Phipps was not certified in any of the test areas, and all the information Mr. Phipps received from the course instructors indicated the petitioners had passed the three physical sections. The evidence did not support the finding.

**Am Jur 2d, Sheriffs, Police, and Constables § 10.**

3. **Sheriffs and Constables § 2 (NCI3d) — handicapped trainees — certification denied — sufficiency of evidence**

The evidence does not support the argument of the North Carolina Sheriffs' Education and Training Standards Commission that petitioners, who are handicapped, did not perform in the same manner as other trainees in a Basic Law Enforcement Training course where the assistant course administrator told an SBI agent that no leniency was given to petitioners; each instructor for the three physical sections testified that petitioners were required to meet the same standards as the other trainees; the defensive tactics training instructor testified that both petitioners had passed the section and that all trainees were required to perform the same maneuvers, although he allowed some modification of the techniques to allow petitioners to begin from a sitting position and to use a crutch instead of a baton; that instructor further testified that the end result was the same and that it was not unusual to modify techniques; the driver training instructor testified that petitioners had passed the same course everyone else took with the modification of hand controls to operate the vehicle; although the instructor had reservations about the petitioners' ability to handle high speed chases, he never witnessed petitioners or any other trainee in such a situation; the only competent evidence on which to base an opinion of Ms. Rector's firearms qualification was testimony that she did qualify; and, even though she was not allowed to fire a shotgun because of her physical condition, the course standards did not require students to qualify with a shotgun.

**Am Jur 2d, Sheriffs, Police, and Constables § 10.**

APPEAL by defendant from Order of *Judge James J. Booker* entered 23 July 1990 in FORSYTH County Superior Court. Heard in the Court of Appeals 14 May 1991.

RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.

[103 N.C. App. 527 (1991)]

*Governor's Advocacy Council For Persons With Disabilities, by Judy J. Burke; and Wright, Parrish, Newton & Rabil, by Carl F. Parrish and Nils E. Gerber, for petitioner appellees.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Ralph B. Strickland, Jr., for respondent appellant.*

COZORT, Judge.

Petitioners are handicapped deputy sheriffs in Forsyth County who were denied basic law enforcement training certification by the respondent North Carolina Sheriffs' Education and Training Standards Commission. The Superior Court of Forsyth County reversed the Commission's decision as arbitrary and capricious, finding petitioners had satisfied the minimum training requirements specified by law. We affirm.

The Commission establishes the minimum hiring, training, and retention standards for deputy sheriffs and sheriffs' jailers in North Carolina. After evaluating applications for compliance with minimum standards, the Commission denies or grants certification. In order to be certified, employment applicants must complete Basic Law Enforcement Training (BLET) within one year of employment. The North Carolina Criminal Justice Education and Training Standards Commission (Criminal Justice Standards Commission) administers BLET courses on a statewide basis.

In 1984, R. Shelton Jones, School Director of Forsyth Technical Institute (Forsyth Tech), Gary Rector, Area Coordinator of the North Carolina Department of Community Colleges, Ron Barker of the Forsyth County Sheriff's Department, and R. W. Phipps of the Winston-Salem Police Department met to establish a BLET course at Forsyth Tech in Winston-Salem, North Carolina. At this meeting, the parties present discussed whether petitioners Polly Rector and Michael Cranford should be excluded from the course because of their physical conditions. Ms. Rector is paralyzed in both legs and uses two crutches for walking. Mr. Cranford is paralyzed in one leg and uses one crutch for walking. Because of the school's "open door" policy it was decided that petitioners would be admitted to the course.

Both petitioners attended the BLET course during the period September 24, 1984 through December 22, 1984. The BLET course included eighteen training sections in which each trainee was re-

quired to obtain a minimum score of seventy percent. Mr. Cranford attended the entire course. Ms. Rector attended only the firearms and driver training sections of the course because she had previously attended an earlier BLET course in the spring of that year.

At the end of the course, R. W. Phipps, assistant administrator of the BLET course, filled out the post-delivery report listing each of the trainee's scores in the eighteen areas of testing and noting successful completion of the course. Mr. Phipps listed Ms. Rector and Mr. Cranford as having successfully completed the course. Mr. Jones, the school director, signed the report indicating that those who had successfully completed the course possessed the "minimum degree of general attributes, knowledge and skill to function as an inexperienced law enforcement officer." Mr. Jones then sent the report to the Criminal Justice Standards Division.

The following day Mr. Gary Rector, the Area Coordinator of the North Carolina Department of Community Colleges, telephoned Mr. Jones and questioned him concerning the inclusion of the petitioners on the post-delivery report. Following his conversation with Mr. Rector, Mr. Jones called Mr. David Cashwell, the Associate Program Administrator of the Criminal Justice Standards Division, and requested the return of the post-delivery report for correction. Upon the return of the report, Mr. Jones struck through the names of Ms. Rector and Mr. Cranford with the intent of removing the petitioners from the list of those who had successfully completed the course. He then returned the report to Mr. Cashwell.

Upon completion of the BLET course, both Ms. Rector and Mr. Cranford received diplomas indicating successful completion of the course.

Nearly two and one-half years later, in mid-April 1987, Ms. Georgia Lea, then Director of the Commission, notified Ms. Rector and Mr. Cranford of the denial of their certification. Both petitioners appealed the decision and requested an administrative hearing pursuant to Chapter 150B of the North Carolina General Statutes.

After a hearing, the Chief Administrative Law Judge Robert A. Melott (ALJ) recommended on 18 October 1988 that petitioners be certified. In his proposal Judge Melott concluded that both petitioners met all requirements for certification.

The Commission rejected the recommendation and denied both petitioners' applications for certification. The Commission conclud-

**RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.**

[103 N.C. App. 527 (1991)]

ed, in orders filed 3 May 1989 that both petitioners had not satisfied the minimum training requirements set forth in the North Carolina Administrative Code and that Mr. Cranford had not satisfactorily completed a commission-accredited basic training course within one year of his probationary appointment as deputy sheriff. Both petitioners appealed the final agency decision to the Superior Court of Forsyth County.

On appeal, Superior Court Judge James J. Booker reversed the Commission, concluding (1) that the petitioners had passed the minimum training requirements and satisfactorily completed a commission-accredited basic training course within one year of their probationary appointments as deputy sheriffs; (2) that any influence by Mr. Rector resulting in the changing of the post-delivery report which was initially based on the evaluation by the instructors was an improper procedure; and (3) that the Commission's decision not to certify the petitioners because of their handicap, despite their instructors' positive evaluation, was arbitrary and capricious. In an order on 21 July 1990, Judge Booker ordered the Commission to issue certifications to the Commission, effective 15 January 1985. Pursuant to N.C. Gen. Stat. § 150B-52 (1987), the Commission appealed the superior court's decision to this Court.

On appeal, the Commission brings forward four major arguments. The Commission first contends that the trial court exceeded its authority by making findings of fact which were not contained in either the ALJ's proposal for decision or the final agency decision. In its next three arguments, the Commission contends the trial court erred by concluding (1) that petitioners met minimum requirements, (2) that petitioners were not certified because they were handicapped, and (3) that the Commission's decision was arbitrary and capricious. Before addressing the Commission's arguments, we first summarize the rules applicable to judicial review of final agency decisions.

N.C. Gen. Stat. § 150B-51 (1987) governs the scope of judicial review of final agency decisions in the superior court. Pertinent to this proceeding, subsection (b) provides:

> [The court] may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> * * * *

**RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.**

[103 N.C. App. 527 (1991)]

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

In reviewing the agency's decision, the superior court applies the "whole record" test, which requires the examination of all competent evidence to determine if the administrative agency's decision is supported by substantial evidence. *Henderson v. N.C. Dep't of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and "is more than a scintilla or a permissible inference." *Lackey v. Dep't of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). In its role as an appellate court, the superior court reviews the agency's decision but is not allowed to replace the agency's judgment with its own when there are two reasonably conflicting views, even though the court could have reached a different result upon de novo review. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). However, "the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. [T]he court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Id.* Upon determining that the agency's decision is not supported by substantial evidence, the superior court may make additional findings of fact in order to show the insubstantiality of the evidence relied upon by the agency. *See Star Automobile Co. v. Saab-Scania of America, Inc.*, 84 N.C. App. 531, 535, 353 S.E.2d 260, 263 (1987).

The whole record test is also applied when determining whether a decision is arbitrary and capricious. *Brooks, Comm'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988). "Administrative agency decisions may be reversed as arbitrary or capricious if they are 'patently in bad faith,' or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'fail to indicate "any course of reasoning and the exercise of judgment." ' " *Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citing *Comm'r of Ins.*

*v. Rate Bureau*, 300 N.C. 381, 420, 269 S.E.2d 547, 573 (1980))
(citation omitted).

[1] We now turn to the issues presented in this case. In 1984, N.C. Admin. Code tit. 12, r.09B.401(a) (August 1984) (now codified at N.C. Admin. Code tit. 12, r.10B.0503(a) (December 1990)) required law enforcement trainees to complete a commission-accredited basic training course within one year of original probationary appointment. N.C. Admin. tit. 12, r.09B.0407 (August 1984) specified the minimum training requirements for certification as a law enforcement officer, as adopted by the Commission. Section r.09B.0407 (now codified as N.C. Admin. tit. 12, r.10B.0509 (December 1990)) stated as follows:

> To satisfy the minimum training requirements for certification as a law enforcement officer, a trainee shall:
>
> (1) achieve a score of 70 percent correct answers on the commission administered comprehensive written examination, provided in Rule .0406 of this Subchapter;
>
> (2) demonstrate successful completion of an accredited offering of the "Basic Recruit Training — Law Enforcement: [sic] course as shown by the certification of the school director;
>
> (3) demonstrate proficiency in the motor-skill and performance subject areas of firearms training, police driver training, vehicle stops, and defensive tactics as shown by the school director's finding of trainee competence;
>
> (4) exhibit a final firearms firing average of at least 70 percent out of a possible 100 percent on a firing range approved by the Director of the Standards Division; and
>
> (5) obtain the recommendation of the trainee's school director that the trainee possesses at least the minimum degree of general attributes, knowledge, and skill to function as an inexperienced law enforcement officer.

In its final agency decision, the Commission concluded that both petitioners failed to satisfy the minimum training requirements set forth in subsections (2), (3), and (5) above. The Commission further concluded that Ms. Rector also failed to satisfy subsection (4). Finally, the Commission concluded that Mr. Cranford did not comply with N.C. Admin. tit. 12, r.09B.0401(a), which requires the

RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.

[103 N.C. App. 527 (1991)]

satisfactory completion of a commission accredited basic training course within one year of his original appointment as deputy sheriff. The Commission's findings and conclusions were based primarily on the testimony of Mr. Shelton Jones, Forsyth Tech Director; Mr. R. W. Phipps of the Winston-Salem Police Department; testimony from three course instructors; and Ms. Rector's firearms scoring memorandum.

After reviewing the whole record, we agree with the superior court that the petitioners met all the pertinent and necessary requirements in all areas for certification. The Commission's decision not to certify the petitioners was not supported by substantial evidence and was arbitrary and capricious.

We first scrutinize the testimony of Forsyth Tech Director Jones and the basis for his refusal to recommend certification of the petitioners. The Commission found that Mr. Jones did not "sit in on every class . . . and actually conduct or observe all the training on [the relevant] areas of these students," but relied upon information received from Mr. Phipps and his own observation of Ms. Rector and Mr. Cranford at registration. The Commission further found that based upon the information available to him, Mr. Jones concluded that Ms. Rector and Mr. Cranford did not have the minimum degree of general attributes, knowledge, and skill to function as inexperienced law enforcement officers.

The evidence shows that Mr. Jones received information concerning the course from Mr. Phipps, the assistant administrator of the course, but that he did not ask specifically about Ms. Rector and Mr. Cranford. Mr. Phipps did not convey to Mr. Jones his opinion that the petitioners had not demonstrated proficiency in the motor-skill and performance subject areas and lacked the minimum degree of general attributes, knowledge, and skill to function as an inexperienced law enforcement officer until after Mr. Jones initially sent in the post-delivery report. Even then, Mr. Jones testified that he did not rely on Mr. Phipps' opinion in making his determination on whether the petitioners had satisfied the five minimum training requirements.

At the time Mr. Jones initially sent in the post-delivery report, the instructors' evaluations were his only source of information concerning the petitioners' *actual* performance in the course. The post-delivery report indicated that both petitioners had received scores of seventy percent or better in each area of testing.

RECTOR v. N.C. SHERIFFS' EDUC. AND TRAINING STANDARDS COMM.

[103 N.C. App. 527 (1991)]

Even when Gary Rector, the Area Coordinator of the North Carolina Department of Community Colleges, telephoned Mr. Jones concerning the petitioners' inclusion on the post-delivery report, Mr. Jones did not question the competence of the instructors or whether the petitioners had actually passed the course. Specifically, he testified: "[A]nd I indicated to Mr. Rector that *they had passed all of the requirements* and we discussed what I should do and what my options were." (Emphasis added.) Mr. Jones further testified that, after reviewing the scores, he had "mixed feelings" about recommending the petitioners for certification and "had to think about it."

During this conversation, Mr. Rector expressed "concerns about the certification of Forsyth Technical College to continue to offer courses at Forsyth Tech," and that Forsyth Tech's accreditation eventually might be revoked if Mr. Jones did not strike the petitioners from the list. According to Mr. Jones, he and Mr. Rector also "talked about bad recommendations or recommendations that could backfire on us later on in court suits and things like that."

After the conversation with Mr. Rector, Mr. Jones telephoned David Cashwell, the Associate Program Administrator of the Criminal Justice Standards Division, and requested the return of the report. Mr. Cashwell testified that in this telephone conversation, Mr. Jones indicated to him that the petitioners had completed the course and that they did possess at least the minimum degree of general attributes, knowledge, and skill to function as an inexperienced law enforcement officer. When asked whether Mr. Rector told him "either in written form or verbal form that it was in fact a Mr. Gary Rector who had instructed him to strike the names from this roster," Mr. Cashwell responded, "I believe we did discuss that." Mr. Cashwell also told Mr. Jones and Mr. Rector that inclusion of the petitioners on the report recommending certification could lead to the loss of Forsyth Tech's accreditation and the loss of certification of any instructor that had not performed correctly.

Despite his "mixed feelings" and recognition that the petitioners had passed the required course indicating the ability to competently function as an inexperienced law enforcement officer, upon the return of the report Mr. Jones crossed out the names of the petitioners. In a cover letter returning the report to Mr. Cashwell, Mr. Jones stated, "Per advice of Gary Rector, two names have been struck from the 'Trainee Roster and Progress Report.' "

Although insisting that Mr. Rector only advised him to "think about" striking the petitioners from the list rather than directing him to do so, Mr. Jones testified that he "just acted on his [Rector's] advice." Mr. Jones further testified that but for the telephone call from Mr. Rector, he probably would not have asked for the return of the post-delivery report.

There is no evidence, however, that Mr. Rector ever observed the petitioners during class. Even if Mr. Rector had observed the petitioners in class, the record is void as to his qualifications to make a judgment concerning the petitioners' competence.

In addition to acting on Mr. Rector's advice, Mr. Jones testified that he made his recommendation that the petitioners had not successfully completed the five minimum training requirements based on "my observations of them at the registration, actually, of the course." His conclusion "after seeing them was that there was no way I could understand how they could fulfill the duties, the full duties, of a police officer." Upon further questioning, Mr. Jones stated: "Well, as I perceive a law enforcement officer they are people who can carry out the defense of the community through their physical attributes and I could not see how they could perform all the activities of a police officer." Mr. Jones stated that he did not personally see the petitioners do anything in the course "that would require them not to be certified," because he did not observe them in class. When asked whether Mr. Cranford and Ms. Rector could "have done anything during the course of the school to change your mind about your first impression about them not being competent or able to pass," Mr. Jones responded, "Well, if, if they could say how or demonstrated [sic] to me that they could chase a criminal or something to that extent."

From this testimony, it is apparent that Mr. Jones withheld his recommendation, at least in part, based on his observations of the petitioners' physical characteristics and his personal opinions, rather than the standards established by the Criminal Justice Standards Commission. The post-delivery report indicating successful completion was the only evidence of the petitioners' *actual* performance in the course available to Mr. Jones when he struck the petitioners' names from the list.

Mr. Jones did not rely upon the test scores and made a decision directly contrary to the competent evidence before him. Since Mr. Jones did not rely upon personal observation during the course,

the instructors' evaluations, or Mr. Phipps' opinion, Mr. Rector's advice and his personal observations of the petitioners at registration were the only other bases for Mr. Jones' determination that the petitioners were not proficient in the motor-skill and performance areas and did not possess the minimum degree of general attributes, knowledge, and skill to function as inexperienced law enforcement officers.

Based upon the whole record, we agree with the superior court that Mr. Jones made an arbitrary and capricious decision based on (1) his conversation with Mr. Rector and (2) his personal observations of the petitioners at registration. We therefore find the Commission's reliance upon Mr. Jones' decision to delete the petitioners' names was arbitrary and capricious.

[2]   With respect to Mr. Phipps, the assistant course administrator, the Commission found (1) that, based upon the information available to him, Mr. Phipps concluded that the petitioners were not sufficiently proficient in firearms training, drivers training and defensive tactics, and lacked the minimum degree of general attributes, knowledge, and skill necessary to function as inexperienced law enforcement officers; and (2) that Mr. Phipps conveyed his opinion to Mr. Jones after the post-delivery report was initially sent in.

The evidence does not support this finding. Although admitting that he "hardly recalled the course," Mr. Phipps testified that he was on the range once when Ms. Rector was shooting. He stated that "I do not know what she shot because I'm not a range officer. I know very little about it except I have to qualify but I let the instructor take care of that. I didn't bother because I'm not an instructor and I don't know how to evaluate 'em." Although Mr. Phipps had special notification that the petitioners were in the course, he testified that he did not make any special effort to see how the course was being conducted or how the petitioners were performing. Mr. Phipps testified that "I was out there but I didn't make a special effort to see is Rector doing this or doing that . . . . I left that entirely to the instructor 'cause they're state certified instructors."

In fact, in 1984, Mr. Phipps was not certified in any of the eighteen test areas and had never even seen the guidelines from the Commission. All the information Mr. Phipps received from the course instructors indicated the petitioners had passed the three physical sections. There was no evidence which would support a

conclusion by Mr. Phipps that petitioners were not as proficient as the standard law enforcement officer.

Since Mr. Phipps' opinion was not substantiated by the evidence, the Commission could not have relied in good faith on his opinion in reaching its decision.

[3]  In an effort to support its decision, the Commission argues in its brief that since the petitioners did not perform in the exact same manner as the other trainees, Ms. Rector and Mr. Cranford were not evaluated on the same standards and therefore did not successfully complete the motor-skills and performance sections of the course despite the passing scores on the post-delivery report. The evidence does not support this argument.

At some point between 1984 and the Commission's final agency decision, the State Bureau of Investigation was brought in to interview people familiar with the proceedings. Mr. Phipps told SBI Agent Susan Forest that to his knowledge no leniency was given to the petitioners. Each instructor for the three physical sections testified that the petitioners were required to meet the same standards as the other trainees. We will address each performance section separately.

Specifically, with respect to the defensive tactics section, the Commission found that (1) Ms. Rector and Mr. Cranford did not adhere to the same techniques as the other students in the defensive tactics class and were not required to use a nightstick to execute certain maneuvers; and (2) Ken Bradstock, the defensive tactics instructor, did not have an opinion as to whether the petitioners could function as law enforcement officers.

Mr. Bradstock testified that both petitioners had passed the section and that all the trainees were required to perform the same maneuvers. He allowed some modification of the techniques to allow Ms. Rector and Mr. Cranford to start a maneuver from a sitting position rather than a standing position and to use a crutch instead of a baton. He testified that "the end result was the same." In an interview with SBI Agent Forest, Mr. Bradstock indicated that it was not unusual to modify techniques, because not every trainee can perform every defensive technique in the same manner.

The Commission was arbitrary and capricious in relying on the modification to certain defensive maneuvers as a basis for deny-

ing certification. Ignoring Mr. Bradstock's testimony that the petitioners had passed the course, the Commission focused instead on the use of crutches rather than a nightstick or baton in the performance of certain defensive techniques. The standard of performance set forth in the basic training course notebook adopted by reference by the Commission stated that each trainee must perform the tactic to the satisfaction of the course instructor. The use of a crutch rather than a baton is irrelevant as long as the petitioners were able to perform the maneuvers and the course section to the satisfaction of the instructor.

With respect to police driver training, the Commission found that (1) during the section, Ms. Rector and Mr. Cranford were allowed to use hand controls to operate the vehicles and were not required to operate the vehicles without such assistance; (2) the hand controls took twenty minutes to install; and (3) Tom Dahlen, the driver training instructor, testified that neither petitioner was able to perform the functions of an inexperienced law enforcement officer because neither could handle a high speed chase.

Mr. Dahlen testified that the petitioners were allowed to use hand controls to operate the vehicle. With this modification, the petitioners passed the same course that was required by the standards and "the same course everybody else took in exactly the same time with the same sheriff's department cars and if it wasn't time it was exactly the same speed." Mr. Dahlen testified that in his opinion the petitioners did have the driving skill and knowledge to perform the "every day" functions of an inexperienced law enforcement officer. He did express reservations about the petitioners' ability to handle high speed chases, but there is no evidence that he ever witnessed the petitioners or any other trainee in such a situation. In addition, Mr. Dahlen never witnessed the petitioners driving vehicles without hand controls and testified that "[t]hey may be able to operate [a car without hand controls], I don't know."

The Commission was arbitrary and capricious in relying on the use and installation of hand controls as a basis for denying certification. Nothing in the course rules prohibited the use of hand controls. In fact, petitioners offered the testimony of a deputy sheriff, a double amputee certified in 1987, who used hand controls during the police driver training section of a BLET course. The use and installation of hand controls is irrelevant in determining whether the petitioners passed the police driver training section.

In addition to focusing on the use of hand controls, the Commission relied upon the unsubstantiated opinion of Mr. Dahlen that the petitioners could not handle a high speed chase. Mr. Dahlen never saw the petitioners attempt a high speed chase.

With respect solely to Ms. Rector, the Commission found that (1) the petitioner made several attempts to pass the firearms section of the course; (2) during her last attempt on the last day of class, only Ms. Rector, the instructor, and then Deputy Sheriff Preston Oldham were on the range when she allegedly fired the qualifying score; and (3) Ms. Rector's scores were inconsistent with the instructor's conclusion that she had qualified.

Mr. R. U. Lloyd, the firearms instructor, testified that Ms. Rector shot the minimum score of seventy percent on the last day of class. According to Mr. Lloyd, Ms. Rector did have some assistance in moving from station to station but did not receive any assistance in obtaining the shooting positions at each station at the time she qualified. The course rules did not prohibit the use of crutches in moving from station to station. Mr. Lloyd further testified that only he, Sheriff Oldham, and Ms. Rector were present at the range when Ms. Rector fired her qualifying score. Both Sheriff Oldham and Ms. Rector corroborated Mr. Lloyd's testimony that Ms. Rector shot a passing score.

Four days after the last day of class, Mr. Lloyd prepared a memorandum setting forth Ms. Rector's score. In this memorandum, Mr. Lloyd stated that Ms. Rector had qualified and that the number of practice times was consistent with other low scoring students attempting to qualify.

Based upon the scoring memorandum, the Commission concluded that the "facts and figures" were "inconsistent with a final score of 70% by Polly Rector on her final qualification attempt." The first column indicating the number of target hits totaled 42, while the second column used to score the hits indicated 45 hits. Ignoring the first column, the Commission based its conclusion that Ms. Rector had not qualified on the information in the scoring column. The report contains an obvious error and is inconclusive. The target used to score Ms. Rector was not introduced into evidence. The only competent evidence on which to base an opinion of Ms. Rector's qualification is thus the testimony of Mr. Lloyd, Sheriff Oldham, and Ms. Rector that she did qualify. Given this testimony and the inconclusive nature of the memorandum, the Commission

could not have reasonably concluded that Ms. Rector did not pass the firearms section of the course.

In its brief, the Commission points out that although the other trainees were required to shoot a shotgun, Ms. Rector was not allowed to do so because of her physical condition. The course standards, however, did not require students to qualify with a shotgun. Ms. Rector's failure to shoot a shotgun cannot be a reasonable basis for finding that she did not successfully complete the firearms section and the BLET course.

When the whole record is viewed, the evidence shows that the Commission denied certification to the petitioners because they were handicapped; the petitioners met the minimum requirements for certification. The trial court's conclusions that the Commission's decisions were arbitrary and capricious and unsupported by the substantial evidence must be affirmed. Having reached that result, we find no error in the trial court's making additional findings of fact which were supported by the evidence, in view of the whole record.

Affirmed.

Judges ORR and WYNN concur.