IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-206

No. COA21-60

Filed 5 April 2022

Wake County, No. 19 CVS 00816

DEBORAH SINK MOSS and CARLA SHUFORD, on behalf of themselves and others similarly situated, Plaintiffs,

v.

N.C. DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, Defendant.

Appeal by Plaintiffs from orders entered 9 July 2020 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 6 October 2021.

> *Zaytoun Ballew & Taylor, PLLC, by John R. Taylor, Robert E. Zaytoun and Clare F. Kurdys, for Plaintiffs-Appellants.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Katherine A. Murphy, for Defendant-Appellee.*

WOOD, Judge.

¶ 1   Deborah Sink Moss and Carla Shuford (collectively, "Plaintiffs") appeal from orders entered on July 9, 2020, 1) granting Defendant's motion to dismiss and 2) affirming the administrative law judge's final decisions. On appeal, Plaintiffs allege the trial court erred by granting Defendant's motion to dismiss and denying their

petition for judicial review.  After a careful review of the record and applicable law, we affirm the orders of the trial court.

## I.  Factual and Procedural Background

¶ 2          When Plaintiff Shuford was 15 years old she was diagnosed with osteogenic sarcoma and a tumor in her left leg.  As a result, her left leg was amputated.  On March 8, 1982, Plaintiff Shuford began working in an administrative position at the University of North Carolina.  While at the University of North Carolina, Plaintiff Shuford was hospitalized due to post-traumatic stress issues relating to the loss of her leg and her physical disabilities.  On August 23, 1988, she applied for short-term disability and received approval shortly thereafter.  On June 15, 1989, Plaintiff Shuford applied for long-term disability and was approved for long-term disability benefits retroactive to August 15, 1988.

¶ 3          On August 18, 1986, Plaintiff Moss worked as a teacher for the Wake County Public School Systems.  Plaintiff Moss was given credit for 10 years of prior work experience.  From November 1988 to December 1989, Plaintiff Moss was in three separate automobile accidents which resulted in injuries that caused her to experience pain while teaching.  Subsequently, Plaintiff Moss was diagnosed with depression and stress from these car accidents.  On April 17, 1990, she applied for short-term disability and was approved shortly thereafter.  She then applied for long-

term disability benefits on April 21, 1991 and was approved on June 11, 1991.

¶ 4    Each Plaintiff receives Transitional Disability Benefits from the North Carolina Department of State Treasurer, Retirement Systems Division ("Defendant"). Under the terms of North Carolina's Transitional Disability Benefits, disability payments are reduced by the gross amount of Social Security Disability benefits to which a person is entitled. As Social Security Disability benefits increase due to cost of living adjustments, the Plaintiffs' disability payments from Defendant are reduced accordingly.

¶ 5    In 2017, Defendant discovered a programming error which failed to account for cost of living increases to Plaintiffs' Social Security benefits. As a result, Defendant's payments of benefits to individuals within the transitional disability group had been overpaid since 2006. Following this discovery, Defendant calculated the amount Plaintiffs should have received and accordingly reduced Plaintiffs' monthly benefit payment amounts to offset the previously overpaid amount.

¶ 6    In 2017, Defendant informed Plaintiff Moss that she owed $13,235.00 in overpayments and informed Plaintiff Shuford that she owed $19,702.00 in overpayments. Defendant then reduced the amounts of Plaintiffs' monthly disability benefits in order to recoup the overpayments.

¶ 7    Plaintiffs Moss and Shuford each filed a petition with the Office of Administrative Hearings ("OAH") in December 2017, challenging the reduction in

their disability payments. Due to similar facts and legal issues, Plaintiffs' cases were consolidated on January 2, 2018. The OAH held separate hearings for each Plaintiff.

¶ 8 On October 9, 2018, Plaintiff Moss's case was heard by the administrative law judge, and on October 9 and 15, 2018, Plaintiff Shuford's case was heard by the administrative law judge. At the hearing, Plaintiff Shuford offered her bank account statements and a spreadsheet as evidence of Defendant's miscalculation of her benefits. At the conclusion of each hearing, Defendant made a Rule 41(b) motion for involuntary dismissal after the evidence was presented for Plaintiff Moss and Plaintiff Shuford.

¶ 9 On December 17, 2018, the administrative law judge issued final decisions in favor of Defendant and dismissed Plaintiffs' cases with prejudice. Although Plaintiff Shuford had proffered her bank account statements at her hearing, the administrative law judge found they were "insufficient evidence to prove that her *gross* . . . [Social Security] Benefits differed from Respondent's accounting." The administrative law judge further held that disability benefit overpayments were State property, not Plaintiffs' personal property. The administrative law judge concluded Plaintiffs (1) offered insufficient evidence to prove that the overpayment calculations were incorrect; (2) knew Social Security disability payments were to be deducted from their payments under the Transitional Disability Benefits; and (3) failed to prove Defendant substantially prejudiced their rights.

¶ 10        On January 16, 2019, Plaintiffs filed petitions in Wake County Superior Court for judicial review of the OAH Decisions, asserting both errors of law and fact. Defendant filed a motion to dismiss. On July 9, 2020, the Superior Court entered an order granting Defendant's motion to dismiss and entered another order affirming the OAH Decisions. From entry of these two orders, Plaintiffs now appeal.

## II.  Discussion

¶ 11        Plaintiffs raise multiple issues on appeal; each will be addressed in turn.

### A. Motion to Dismiss

¶ 12        Plaintiffs first argue the trial court erred by granting Defendant's motion to dismiss because Plaintiffs had established valid claims for breach of contract. We disagree.

¶ 13        We begin our review by noting a motion to dismiss is reviewed *de novo*. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015); *Holton v. Holton*, 258 N.C. App. 408, 414, 813 S.E.2d 649, 654 (2018). Here, the Superior Court granted Defendant's motion to dismiss under both Rule 12(b)(1) and 12(b)(6).

#### 1.  12(b)(6) Motion

¶ 14        Turning first to Rule 12(b)(6), a Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint . . . ." *Isenhour v. Hutto,* 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (quoting *Forsyth v. Memorial Hosp. v. Armstrong World Indus.*, 336

N.C. 438, 442, 444 S.E.2d 423, 425 (1994)). "When reviewing the denial of a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in plaintiff's complaint are treated as true." *Id.* (citing *Cage v. Colonial Bldg. Co.*, 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994)).

¶ 15 A Rule 12(b)(6) motion reviews whether "as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory." *Forsyth Memorial Hosp.*, 336 N.C. at 442, 444 S.E.2d at 425-26 (citation omitted). *See Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419, (2000). *See also Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 218, 367 S.E.2d 647, 649 (1988) ("A claim should be dismissed under Rule 12(b)(6) where it appears that the plaintiff is entitled to no relief under any statement of facts which could be proven.").

¶ 16 Turning to Plaintiff's argument that they had established valid claims for breach of contract, the elements for a breach of contract claim are the existence of a valid contract and a breach of the terms therein. *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 216, 768 S.E.2d 582, 590 (2015); *see Poor v. Hill*, 138 N.C.

App. 19, 26, 530 S.E.2d 838, 843 (2000).

¶ 17    The relationship between State employees and the long-term disability system is contractual in nature. *See Wells v. Consolidated Judicial Retirement Sys.*, 136 N.C. App. 671, 673, 526 S.E.2d 486, 488 (2000). The long-term disability system is governed by Article 6 Chapter 135 of the North Carolina General Statutes. N.C. Gen. Stat. § 135-100(a) (2021). Chapter 135 was enacted in 1987 and became effective on January 1, 1988. An Act to Make Appropriations for Current Operations of State Departments, Institutions, and Agencies, and For Other Purposes Except For Aid to Certain Governmental and Nongovernmental Units, ch. 738, § 29(r), 1987 N.C. Session Laws 1354, 1392. The contractual right to long-term disability benefits vests after "five or more years of membership service." N.C. Gen. Stat. § 135-106(a) (1988). However, a transitional provision provides an opportunity for employees who were employed at the time of Chapter 135's enactment to receive disability benefits despite having less than five years of membership service:

> Any participant in service as of the date of ratification of this Article and who becomes disabled after one year of membership service will be eligible for all benefits provided under this Article notwithstanding the requirement of five years' membership service to receive the long-term benefit; provided, however, any beneficiary who receive[s] benefits as a result of this transition provision before completing five years of membership service shall receive lifetime benefits in lieu of service accruals under the Retirement System as otherwise provided in [N.C.] G[en]. S[tat]. [§] 135-4(y).

N.C. Gen. Stat. § 135-112(a) (1988).

¶ 18        Here, Plaintiffs were both employed as teachers for the State for at least one year, and thus, Plaintiffs qualified for long-term disability benefits. To the extent Plaintiffs and Defendant differ as to whether Plaintiffs were vested beneficiaries of the Teachers' & State Employees' Retirement System, or only in the transitional disability group per Section 135-112(a), we need not reach the merits of this argument. In the case *sub judice*, Plaintiffs only challenge Defendant's right to recoup disability benefits. Thus, whether Plaintiffs were vested beneficiaries or not, Plaintiffs were still eligible for, and indeed received, disability payments under Chapter 135. These disability payments, in turn, are governed by the statutory requirements within Chapter 135. *See Wells*, 136 N.C. App. at 673, 526 S.E.2d at 488.

¶ 19        Under N.C. Gen. Stat. § 135-106(b), the amount of long-term disability benefits received were supposed to be offset dollar-for-dollar by the Social Security Disability benefit for which Plaintiffs would otherwise be eligible. N.C. Gen. Stat. § 106(b) (1988). Additionally, each contract contained a recoupment provision pursuant to N.C. Gen. Stat § 135-9. When Chapter 135 became effective in 1988, Section 135-9(b) stated

> [n]otwithstanding any provisions to the contrary, *any overpayment of benefits to a member* in a state-administered retirement system or the former Disability

> Salary Continuation Plan or the Disability Income Plan of North Carolina *may be offset* against any retirement allowance, *return of contributions or any other right accruing under this Chapter* to the same person, the person's estate, or designated beneficiary.

N.C. Gen. Stat. § 135-9(b) (1988) (emphasis added). *See* N.C. Gen. Stat. § 143-64.80(a). At the time of Plaintiffs' hearings in 2018, our General Assembly had amended the language of Section 135-9(b) so that it read,

> [n]otwithstanding any provisions to the contrary, *any overpayment of benefits or erroneous payments to a member* in a State-administered retirement system or the former Disability Salary Continuation Plan or the Disability Income Plan of North Carolina, including any benefits paid to, or State Health Plan premiums or claims paid on behalf of, any member or beneficiary who is later determined to have been ineligible for those benefits or unentitled to those amounts, *may be offset against any retirement allowance, return of contributions or any other right accruing under this Chapter to the same person*, the person's estate, or designated beneficiary.

N.C. Gen. Stat. § 135-9(b) (2018) (emphasis added).

¶ 20 Moreover, the State has a duty under Section 143-64.80 to pursue the recoupment of any overpayment: "No State department, agency, or institution, or other State-funded entity may forgive repayment of an overpayment of State funds, but shall have a duty to pursue the repayment of State funds by all lawful means available, including the filing of a civil action in the General Court of Justice." N.C. Gen. Stat. § 143-64.80(b) (2018). The plain language of Section 135-9 in both 1988

and 2018 required the State to recoup any overpayments resulting from disability payments. In other words, the statutory terms of Plaintiff Moss and Plaintiff Shuford's right to receive disability payments included a recoupment clause which mandated Defendant to seek reimbursement from any overpayment.

¶ 21       Although we sympathize with the financial difficulties faced by Plaintiffs due to Defendant's error, Plaintiffs' statutory right to disability benefits also mandates the Defendant to seek recoupment of overpayments. *See* N.C. Gen. Stat. § 135-9(b) (2018). Plaintiffs' argument that Defendant's lawful action under the terms of Chapter 135 constitutes a breach of contract fails because Defendant had "a duty to pursue the repayment of State funds by all lawful means available." § 143-64.80(b). Therefore, we hold the trial court did not err by granting Defendant's motions to dismiss.

### 2. *12(b)(1) Motion*

¶ 22       Plaintiffs next argue the trial court erred by granting Defendant's motion to dismiss under Rule 12(b)(1). A trial court grants a motion to dismiss pursuant to Rule 12(b)(1) when the court lacks jurisdiction over a subject matter. N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2021). A party, or the court on its own, may assert lack of jurisdiction. *Dale v. Lattimore*, 12 N.C. App. 348, 352, 183 S.E.2d 417, 419 (1971). "The filing of a motion to dismiss under Rule 12(b)(1) does not raise an issue of fact[,] [i]t challenges the jurisdiction of the court over the subject matter." *Journeys*

*International, Inc. v. Corbett*, 53 N.C. App. 124, 125, 280 S.E.2d 5, 6 (1981). A Rule 12(b)(1) motion may not be viewed in the same manner as a Rule 12(b)(6) motion because under Rule 12(b)(1) "matters outside the pleadings[] . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).

¶ 23    Here, Plaintiffs specifically contend that Defendant waived the defense of sovereign immunity when it entered into a contract with Plaintiffs. *See Guthrie v. North Carolina State Ports Authority*, 307 N.C. 522, 535, 299 S.E.2d 618, 625 (1983) ("Sovereign immunity is a legal principle which states in its broadest terms that the sovereign will not be subject to any form of judicial action without its express consent."). However, because the trial court properly granted Defendant's motion to dismiss under 12(b)(6) we need not address Plaintiffs' argument regarding 12(b)(1).

**B. Plaintiffs' Petition for Judicial Review**

¶ 24    Next, Plaintiffs contend the trial court erred by affirming the administrative law judge's decisions. "When the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004) (first citing *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002); and then citing *Avant v. Sandhills Ctr. For Mental Health, Development Disabilities & Substances Abuse Servs.*, 132 N.C. App. 542, 545, 513 S.E.2d 79, 82

(1999)).

¶ 25        Under N.C. Gen. Stat. § 150B-51, the reviewing court may affirm or remand a final decision.  N.C. Gen. Stat. § 150B-51(b) (2021).  The reviewing court may also "reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:" 1) A "violation of constitutional provisions"; 2) an "excess of the statutory authority or jurisdiction of the agency or administrative judge"; 3) an "unlawful procedure"; or 4) "[a]ffected by other error of law . . . ." § 150B-51(b)(1)-(4).  If a petitioner alleges any of the above has been violated, the reviewing court must apply a *de novo* standard of review.  § 150B-51(c).  However, if a reviewing court is determining whether the findings, inferences, conclusions, or decisions are "[u]nsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted" or "[a]rbitrary, capricious, or an abuse of discretion," a whole record standard of review is to be applied.  § 150B-51(b)(5)-(6), (c).

¶ 26        When this Court reviews an appeal from a superior court which either affirmed or reversed an administrative agency's decision, we review for two factors: "(1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard." *Mayo v. N.C. State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (2005) (citing *In re Appeal by McCrary*, 112 N.C. App. 161, 166, 435 S.E.2d 359, 363 (1993), *aff'd*, 360 N.C. 52, 619 S.E.2d 502

(2005).

### 1. Bank Account Statements

¶ 27      Plaintiffs initially allege the administrative law judge's decisions are not supported by competent evidence because they did not consider Plaintiff  Shuford's financial records.  Plaintiffs argue that the financial records provided by Plaintiff Shuford were conclusive to show the State's mathematical calculations used to withhold Plaintiffs' disability statements were incorrect.  Since Plaintiffs allege the decisions were not supported by substantial evidence, the trial court was required to apply a whole record standard of review.  *See* § 150B-51(c).  The trial court appropriately applied such standard, stating "[w]ith respect to assertions of fact-based errors, the Court has applied a whole record standard of review."  Thus, we conclude the trial court did not err in its standard of review.

¶ 28      Next, we examine whether the trial court applied the whole record standard of review correctly.  The whole record test "requires the examination of all competent evidence to determine if the administrative agency's decision is supported by substantial evidence."  *Rector v. North Carolina Sheriffs' Educ. & Training Standards Com.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991) (citing *Henderson v. N.C. Dep't of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d, 887, 889 (1988)).  Substantial evidence is relevant evidence "a reasonable mind might accept as adequate to support a conclusion."  *Avant v. Sandhills Ctr. for Mental*

*Health, Developmental Disabilities & Substance Abuse Servs.*, 132 N.C. App. 542, 546, 513 S.E.2d 79, 83 (1999) (quoting *Lackey v. N.C. Dep't of Human Resources, etc.*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982)). Notably, the whole record test is not a "tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979). Even if the record contains evidence contrary to an agency's findings, an appellate court may not substitute its judgment in lieu of the agency's judgment. *Avant*, 132 N.C. App. at 547, 513 S.E.2d at 83.

¶ 29 Applying the whole record standard of review, we consider the following evidence. Plaintiff Shuford offered her bank account statements and a spreadsheet into evidence. Plaintiff Shuford's spreadsheet showed the amount of social security payments deposited into her bank account, amount of disability payments deposited into her bank account, benefits paid by the state, social security offset amount calculated by the state, benefit amount the state should have paid, and social security offset amount the state should have paid from January 2006 until July 2017. Defendant also provided a spreadsheet detailing the amount it actually paid Plaintiff Shuford versus the amount it should have paid. The social security offset amount on Plaintiff Shuford's spreadsheet differed from the social security offset amount on the spreadsheet prepared by Defendant. For instance, Plaintiff Shuford's spreadsheet

showed the social security offset amount for December 2006 was $1,056.00, while Defendant's spreadsheet showed Plaintiff Shuford's social security offset amount for the same date was $1,090.00.

¶ 30        These discrepancies are not due to a calculation error by Defendant, but rather are indicative of potential withholdings. Thomas Causey, a witness on behalf of Defendant, testified the social security offset amount illustrated on Plaintiff Shuford's spreadsheet statements does not consider potential money withheld by the Social Security Administration. Causey further testified that "Social Security has other deductions that they take out before . . . direct deposits are made for members. . . . So . . . the direct deposits, again, would not help us to know the amount that should be deducted." In other words, the amount of social security offset in Plaintiff Shuford's spreadsheet shows only the net amount of her social security benefits if money was withheld, not the gross amount of the benefits. The social security offset amount in Defendant's spreadsheet showed the gross amount of social security benefits received by Plaintiff Shuford prior to any withholdings. As a result, if the Social Security Administration was withholding money from the gross amount provided to an individual, this would be reflected in a lower amount being deposited into the individual's bank account. Nowhere within the record did Plaintiff Shuford offer evidence of the gross amount she received from the Social Security Administration, only proffering evidence as to the net amount. Therefore, the

administrative law judge had substantial evidence from Defendant's spreadsheet to support its decisions.

¶ 31 Assuming *arguendo* Plaintiff Shuford's spreadsheet sufficed as contrary evidence for the purpose of calculating the overpayment amount, we are not permitted to substitute our judgment for that of the administrative law judge just because contrary evidence existed. *See id.*; *see also City of Rockingham v. N.C. Dep't of Env't & Natural Res.*, 224 N.C. App. 228, 239, 736 S.E.2d 764, 771 (2012) ("In an administrative proceeding, it is the prerogative and duty of that administrative body, once all the evidence has been presented and considered, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." (internal quotation marks omitted)). In light of the foregoing findings, we hold substantial evidence existed regarding the financial records to support the administrative law judge's decisions.

### 2. *Cost of Living Adjustments*

¶ 32 Plaintiffs also contend the administrative law judge erred by not considering Defendant's possible overpayments in the years when the Social Security Administration did not increase benefits due to a cost of living adjustments ("COLA"). Because Plaintiffs challenge whether findings of fact within the decisions were supported by substantial evidence, the trial court was required to apply a whole

record standard of review. See § 150B-51(c). The trial court appropriately applied

such standard, stating "[w]ith respect to assertions of fact-based errors, the Court has

applied a whole record standard of review." Therefore, we must analyze whether the

trial court appropriately applied the whole record standard of review.

¶ 33          In this case, the administrative law judge made the following relevant findings

of fact:

> 35. Because ORBIT had not been programmed to deduct
> the cost-of-living adjustments from the Transitional
> Benefit accounts, Petitioner Moss'[s] Transitional
> Disability Benefits had not been reduced by the Social
> Security cost-of-living adjustment increases which
> occurred in the years of 2006, 2007, 2008, 2011, 2012, 2013,
> 2014, and 2016.
>
>  . . .
>
> 56. Subsequently, on June 16, 2017, Respondent notified
> Petitioner Shuford that Social Security cost-of-living
> adjustments had been given in 2006, 2007, 2008, 2011,
> 2012, 2013, 2014, and 2016, but that these cost-of-living
> adjustments had not been deducted from Shuford's
> Transitional Disability Benefits.

In 2009, 2010, and 2015, no COLA was awarded, and thus, the Social Security

Administration did not increase its benefits. A careful review of Defendant's "should

have paid" spreadsheets for each Plaintiff reveals Defendant did not increase the

amounts of their social security benefits in the years when no COLA was granted. In

the administrative law judge's findings, she omitted the years 2009, 2010, and 2015,

the same years COLA was not awarded. Accordingly, we hold the administrative law

judge considered Defendant's possible overpayments to Plaintiffs in the years COLA was not awarded and substantial evidence supported her findings.

### 3. *Breach of Contract*

¶ 34      Finally, Plaintiffs contend the trial court erred by denying their petition for judicial review because the administrative law judge did not consider their contractual rights to receive disability benefits. We disagree.

¶ 35      As explained above, Plaintiffs' rights to disability payments were subject to Chapter 135's statutory requirements. These requirements, in turn, contained a mandatory recoupment clause pursuant to N.C. Gen. Stat. § 135-9(b). Thus, by accepting disability benefits, Plaintiffs agreed Defendant would recoup any overpayments of benefits to them. Furthermore, a careful review of the administrative law judge's decisions shows she properly considered the mandatory recoupment clause inherent to Plaintiffs' disability benefits. Therefore, substantial evidence existed to support the administrative law judge's conclusions Defendant acted within its statutory duty to recoup overpayments made to Plaintiffs, and Plaintiffs' argument is without merit.

## C. Collateral Estoppel

¶ 36      Although Defendant crafted a lengthy argument as to why Plaintiffs are barred from pursuing their claims in superior court under the doctrine of collateral estoppel, collateral estoppel is an affirmative defense under Rule 8 and thus must have been

raised in the trial court in order to preserve this argument for appeal. N.C. Gen. Stat. § 1A-1, Rule 8(c) (2021); N.C. R. App. P. 10(a)(1). "Failure to plead an affirmative defense ordinarily results in waiver of the defense." *Ward v. Beaton*, 141 N.C. App. 44, 49, 539 S.E.2d 30, 34 (2000). Defendant raised the affirmative defense of collateral estoppel for the first time on appeal, and thus failed to preserve this issue for appeal. See also *In re D.R.S.*, 181 N.C. App. 136, 140, 638 S.E.2d 626, 628 (2007) (since "respondent raise[d] the defenses of collateral estoppel and *res judicata* for the first time on appeal, . . . [respondent] thus failed to properly preserve the issue[]").

### III.   Conclusion

For the foregoing reasons, the trial court did not err by granting Defendant's motion to dismiss. Additionally, the trial court did not err by affirming the OAH Decisions entered by the administrative law judge. Accordingly, the orders of the trial court are affirmed.

AFFIRMED.

Judges ZACHARY and CARPENTER concur.