HUGH A. WELLS, JUDGE OF THE NORTH CAROLINA COURT OF APPEALS (RETIRED), PLAINTIFF v. CONSOLIDATED JUDICIAL RETIREMENT SYSTEM OF NORTH CAROLINA, A CORPORATION; BOARD OF TRUSTEES OF THE TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; AND THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA99-566

(Filed 7 March 2000)

### 1. Pensions and Retirement— judicial benefits—return to state employment

The trial court did not err in concluding that N.C.G.S. §§ 135-3(8)c and 135-3(8)d apply to plaintiff, thus forfeiting plaintiff's contractual right to his judicial monthly service retirement benefit for the period of time when he served as Chairman of the Utilities Commission, because: (1) the prohibition within N.C.G.S. § 135-3(8)(d), providing that plaintiff's benefits would cease if he returned to employment with the State of North Carolina following his retirement from the Court of Appeals, was in effect in 1984 when plaintiff's right to Consolidated Judicial Retirement System benefits vested, although it was contained in the predecessor statute of N.C.G.S. § 135-3(8)(c); and (2) even though N.C.G.S. § 135-3(8)(d) is located within Article 1 of Chapter 135, since 1982 the legislature has made clear its intent that the provisions of Article 1 of Chapter 135, the Teachers' and Employees' Retirement System, apply to the Retirement System as a whole.

### 2. Pensions and Retirement— judicial benefits—return to state employment—constitutionality

The Retirement System's interpretation of N.C.G.S. § 135-3(8)(d), providing that plaintiff's benefits would cease if he returned to employment with the State of North Carolina following his retirement from the Court of Appeals, does not violate the taking clause and the equal protection clause because: (1) plaintiff did not have a property interest in the Consolidated Judicial Retirement System benefits while he was employed by the Utilities Commission; and (2) plaintiff was not treated differently than similarly situated persons since all retired officers and employees are subject to the provisions of N.C.G.S. § 135-3(8)(d).

### 3. Civil Procedure— affidavit—served after hearing—harmless error

Although the trial court abused its discretion in admitting an affidavit served after the hearing on the parties' motions for summary judgment in a case concerning plaintiff's rights to retirement benefits in the Consolidated Judicial Retirement System, the error was harmless in light of the fact that the trial court would likely have reached the same result by identifying and applying the relevant statutes. N.C.G.S. § 1A-1, Rule 61.

Judge HORTON dissenting.

Appeal by plaintiff from judgment entered 29 March 1999 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Court of Appeals 5 January 2000.

*Marvin Schiller and Boyce & Isley, P.L.L.C., by G. Eugene Boyce, for plaintiff petitioner-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for defendants respondents-appellees.*

TIMMONS-GOODSON, Judge.

The facts of the present case are undisputed. In August of 1979, Judge Hugh A. Wells ("plaintiff") began serving on the North Carolina Court of Appeals, became a member of the Consolidated Judicial Retirement System ("CJRS") and made regular contributions to it. His right to retirement benefits vested in August of 1984. On 30 June 1994, plaintiff retired from the bench, at which time he qualified for a CJRS monthly benefit. He received one check from CJRS. One month after plaintiff retired from the Court of Appeals, Governor James B. Hunt, Jr. appointed him Chairman of the Utilities Commission. As a result of this appointment, plaintiff became a member of the Teachers' and State Employees' Retirement System of North Carolina. The CJRS terminated plaintiff's monthly CJRS benefit. On 31 December 1996, plaintiff resigned from the Utilities Commission. While the CJRS restored plaintiff's monthly benefit effective 1 January 1997, the CJRS did not pay plaintiff his benefit from 1 August 1994 through 31 December 1996.

On 12 March 1998, plaintiff filed a petition for a case hearing in the Office of Administrative Hearings wherein he sought payment of

his CJRS benefit from 1 August 1994 through 31 December 1996. Senior Administrative Law Judge Fred G. Morrison, Jr. filed a decision on 5 June 1998, recommending that plaintiff be denied relief. The Board of Trustees of the Teachers' and State Employees' Retirement System adopted the recommended decision as the final agency decision on 4 August 1998. Plaintiff filed a petition for judicial review in Superior Court, Wake County. On 29 March 1999, Superior Court Judge Narley L. Cashwell entered judgment affirming the final agency decision and granting summary judgment for defendants. Plaintiff appeals.

On appeal, plaintiff argues that: (I) the Retirement System applied the wrong statute; (II) the Retirement System's interpretation of North Carolina General Statutes section 135-3(8) is unconstitutional; and (III) the trial court erred in admitting the affidavit of Timothy S. Bryan into evidence.

The relationship between State employees and the Retirement System is contractual in nature. *Simpson v. N.C. Local Gov't Employees' Retirement System*, 88 N.C. App. 218, 223, 363 S.E.2d 90, 93 (1987), *aff'd*, 323 N.C. 362, 372 S.E.2d 559 (1988). In North Carolina, contractual rights vest in the Retirement System after five years of membership. N.C. Gen. Stat. § 135-57(c) (1997). The contract is embodied in state statute and governed by statutory provisions as they existed at the time the employee's contractual rights vested. *Id.* at 224, 363 S.E.2d at 94. "[Members of the Retirement System] had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested." *Id.*

Plaintiff became a member of the CJRS in August of 1979. Therefore, his right to retirement benefits vested in August of 1984. At that time, the relationship between plaintiff and the Retirement System became contractual in nature. Said contract was governed by the provisions of Chapter 135 as they existed in 1984.

[1] By his first assignment of error, plaintiff argues that neither North Carolina General Statutes section 135-3(8)c nor section 135-3(8)d applies to him. N.C. Gen. Stat. § 135-3(8)c (1984); N.C. Gen. Stat. § 135-3(8)d (1994). As a consequence, plaintiff asserts that he did not forfeit his contractual right to his judicial monthly service retirement benefit for the period of time when he served as Chairman of the Utilities Commission. We cannot agree.

The CJRS based its decision to suspend plaintiff's benefits on North Carolina General Statutes section 135-3(8)d, which provides:

> Should a beneficiary who retired on an early or service retirement allowance under this Chapter be restored to service as an employee or teacher, then the retirement allowance shall cease as of the first of the month following the month in which the beneficiary is restored to service and the beneficiary shall become a member of the Retirement System and shall contribute thereafter as allowed by law at the uniform contribution payable by all members.

N.C.G.S. § 135-3(8)d. According to plaintiff, the above prohibition does not apply to him because section 135-3(8)d was not in effect when plaintiff's contractual right to CJRS benefits vested in 1984. However, the prohibition within North Carolina General Statutes section 135-3(8)d was in effect when plaintiff's right to CJRS benefits vested; the prohibition was contained in North Carolina General Statutes section 135-3(8)c, the predecessor statute to North Carolina General Statutes section 135-3(8)d, which provided:

> Should a beneficiary who retired on an early or service retirement allowance be restored to service for a period of time exceeding six calendar months, his retirement allowance shall cease, he shall again become a member of the Retirement System and he shall contribute thereafter at the uniform contribution rate payable by all members. . . .

N.C.G.S. § 135-3(8)c. By relying on section 135-3(8)d as the basis for its decision to suspend plaintiff's benefits, the CJRS merely cited the statute which currently contains the prohibition that was in effect when plaintiff's benefits vested.

Before examining section 135-3(8)d, we note that the CJRS' interpretation of the provisions in issue is entitled to deference. *Taylor v. City of Lenoir*, 129 N.C. App. 174, 497 S.E.2d 715 (1998). "While it is not controlling, the construction given a statute by the agency charged with administering it is relevant evidence of the statute's meaning." *Id.* at 181, 497 S.E.2d at 721.

Plaintiff further argues that section 135-3(8)d does not apply to him because it is located within Article 1 of Chapter 135, the Teachers' and Employees' Retirement System, while his benefits vested under Article 4 of Chapter 135, the Consolidated Judicial Retirement System. However, since 1982 the legislature has made

clear its intent that the provisions of Article 1 apply to the Retirement System as a whole.

> [E]xcept as otherwise provided in this Article, the provisions of Article 1 are applicable and shall apply to and govern the administration of the Retirement System established hereby. Not in limitation of the foregoing, the provisions of G.S. 135-5(h), 135-5(n), 135-9, 135-10, 135-12 and 135-17 are specifically applicable to the Retirement System established hereby.

N.C. Gen. Stat. § 135-52(a) (1994).

At oral argument, plaintiff conceded that Article 1 of Chapter 135 applies to Article 4 of Chapter 135 for the limited purpose of administration. Plaintiff argued that Article 1 merely contains "administrative requirements" for Article 4 and that those provisions within Article 1 which pertain to "benefits" rather than "administration" do not apply to Article 4. We cannot agree.

While section 135-52(a) states that the provisions of Article 1 "shall apply to and govern the administration of the Retirement System," it also states more broadly that the provisions of Article 1 "are applicable." *Id.* Pursuant to section 135-52(a), certain provisions are specifically applicable to the whole Retirement System, namely sections 135-5(h), 135-5(n), 135-9, 135-10, 135-12, and 135-17. N.C.G.S. § 135-52(a). However, the list of provisions within section 135-52(a) is not an exhaustive one; the statutory language provides that the list of specifically applicable provisions is "[n]ot in limitation of" the general rule that the "provisions of Article 1 are applicable." *Id.*

Furthermore, while plaintiff argues an "administration"/"benefits" dichotomy, he offers no definition of said terms. An examination of Articles 1 and 4 does not reveal any relevant statutory definitions. In interpreting words in a statute, we rely on their common meaning absent a definition or contextual cue to the contrary. *Abernethy v. Commissioners*, 169 N.C. 631, 86 S.E. 577 (1915). Applying the same principle here, we note that "administration" is commonly understood to be "the practical management and direction" of the operations of the various agencies. Black's Law Dictionary 44 (7th ed. 1999).

Upon examination of those provisions of Article 1 which the legislature has explicitly deemed applicable to Article 4, we are not convinced that they are merely administrative in nature. For example, North Carolina General Statutes section 135-9 provides that retire-

ment benefits "are exempt from levy and sale, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this Chapter specifically otherwise provided." N.C. Gen. Stat. § 135-9 (1997). Section 135-9 does not pertain to practical management, but instead pertains to the nature of benefits. Therefore, we hold that section 135-9 is not merely administrative in nature. Accordingly, we reject plaintiff's arguments that only those provisions of Article 1 which are administrative in nature apply to Article 4.

Plaintiff further argues that section 135-3(8)d does not apply to him because statutory terms within the section exclude him. More specifically, plaintiff argues that he is not a "member" for purposes of North Carolina General Statutes section 135-3(8). Section 135-3(8) states that "[t]he provisions of this subsection (8) shall apply to any member[.]" N.C.G.S. § 135-3(8) (emphasis added). The term "member" is defined as "any teacher or State employee." N.C. Gen. Stat. § 135-1(13) (1994). The definition of the term "employee" excludes any members of CJRS. N.C. Gen. Stat. § 135-1(10) (1994). Plaintiff argues that given he is neither a teacher nor an employee, section 135-3(8) does not apply to him.

However, the legislature has indicated that Article 1 provisions which refer to "members" may apply to CJRS members. North Carolina General Statutes sections 135-5(n), 135-9, 135-10, and 135-17 all employ the term "member" and have all been held specifically applicable to Article 4. N.C.G.S. § 135-52(a).

Similarly, plaintiff argues that he is excluded by the terms of section 135-3(8)d because he did not retire on an "early" or "service retirement" allowance. N.C.G.S. § 135-3(8)d. North Carolina General Statutes section 135-1(23) defines "service" as "service as a teacher or State employee as described in subdivision (10) or (25) of this section." N.C. Gen. Stat. § 135-1(23) (1994). Plaintiff is not a teacher for purposes of section 135-1(25), and section 135-1(10) defines "employee" so as to exclude members of the¦ CJRS.

Plaintiff relies on the statutory definition of "employee" of section 135-1(10) in an effort to show that he was not on "service retirement." However, we have already determined that section 135-1(10) does not preclude application of section 135-3(8)d to plaintiff. The legislature indicated that the term "member" applies to Article 4 even while "member" is defined as a teacher or State employee. N.C.G.S. § 135-1(13). It follows that "service" may apply to Article 4 even while

"service" is defined as service as a teacher or State employee. N.C.G.S. § 135-1(23).

In sum, after giving deference to the CJRS' interpretation of the provisions in issue and noting the general rule of section 135-52 that the provisions of Article 1 are applicable to Article 4, we are not convinced that the language of section 135-3(8)d prohibits application of the statute to plaintiff.

We conclude that the prohibition contained within section 135-3(8)d existed when plaintiff's rights vested in the Retirement System and that the prohibition applies to plaintiff. Therefore, plaintiff's contract under Chapter 135 provided that his benefits would cease if he returned to employment with the State of North Carolina following his retirement from the court.

[2] By his second assignment of error, plaintiff argues that the Retirement System's interpretation of North Carolina General Statutes section 135-3(8)d violates the Taking Clause and the Equal Protection Clause of both the United States and the North Carolina Constitutions. We cannot agree.

As discussed above, plaintiff's contract under Chapter 135 provided that his benefits would cease if he returned to employment with the State of North Carolina following his retirement from the court. Therefore, plaintiff did not have a property interest in the CJRS benefits while he was employed by the Utilities Commission. We conclude that there was no violation of plaintiff's rights under the Taking Clause of either the United States or the North Carolina Constitution. *See Woods v. City of Wilmington,* 125 N.C. App. 226, 480 S.E.2d 429 (1997).

Furthermore, all retired officers and employees are subject to the provisions of North Carolina General Statutes section 135-3(8)d. Therefore, plaintiff was not treated differently than similarly situated persons. We conclude that the Retirement System's interpretation of North Carolina General Statutes section 135-3(8)d does not violate the Equal Protection Clause of either the United States or the North Carolina Constitution. *See Texfi Industries v. City of Fayetteville,* 301 N.C. 1, 269 S.E.2d 142 (1980).

[3] By his third assignment of error, plaintiff argues that the trial court erred in admitting the affidavit of Timothy S. Bryan into evidence. We agree.

"[S]upporting affidavits should be filed and served sufficiently in advance of the hearing to permit opposing affidavits to be filed prior to the day of the hearing." *Battle v. Nash Tech. College*, 103 N.C. App. 120, 127, 404 S.E.2d 703, 706-07 (1991) (quoting *Insurance Co. v. Chantos*, 21 N.C. App. 129, 130, 203 S.E.2d 421, 423 (1974), *cert. denied*, 287 N.C. 465, 215 S.E.2d 624 (1975)). Once an affidavit has been served, the trial court has broad discretion under North Carolina Rule of Civil Procedure 56(e) to permit affidavits to be supplemented or opposed. *Id.*

In the present case, a hearing on the parties' motions for summary judgment was held on 8 February 1999. The affidavit of Timothy Bryan was filed with the court and served on plaintiff on 10 February 1999. In other words, the affidavit was not served prior to the day of hearing. Therefore, the trial court abused its discretion in failing to exclude the affidavit of Timothy Bryan. However, even if the affidavit had been excluded, the trial court would likely have reached the same result in this case by identifying and applying the relevant statutes. *See* N.C. Gen. Stat. § 1A-1, Rule 61 (1990). *See also Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E.2d 859, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985). We conclude that the error was harmless.

For the reasons stated herein, the decision of the trial court is affirmed.

Affirmed.

Judge McGEE concurs.

Judge HORTON dissents.

Judge HORTON dissenting.

In 1973, the North Carolina General Assembly created a uniform retirement system for "all justices and judges of the General Court of Justice who are so serving on the effective date of this act [1 January 1974], or who become such thereafter." 1973 Sess. Laws ch. 640, § 1. By direction of the General Assembly, the provisions of the Uniform Judicial Retirement Act (the Act) were codified as Article 4 of Chapter 135 of our General Statutes. The Act provided that the "retirement benefits of any person who becomes a justice or judge on or after the effective date of this act shall be determined solely in

accordance with the provisions of this Article." 1973 Sess. Laws ch. 640, § 1(c). Although it is not pertinent to this appeal, the Uniform Judicial Retirement Act is now the Consolidated Judicial Retirement Act, and includes clerks of superior court, district attorneys, and the Administrative Officer of the Courts as members.

Judge Hugh A. Wells became a member of the North Carolina Court of Appeals on 20 August 1979, and made contributions to the Judicial Retirement System. Judge Wells' retirement benefits vested on 20 August 1984, after five years of continuous service. Members of the Retirement System have a contractual relationship with that System and may rely on the terms of that contract as set out in the applicable statutes on the date the members become vested in the retirement plan. *Simpson v. N.C. Local Gov't Employees' Retirement System*, 88 N.C. App. 218, 224, 363 S.E.2d 90, 94 (1987), *aff'd*, 323 N.C. 362, 372 S.E.2d 559 (1988). Judge Wells served on the Court of Appeals until his retirement on 30 June 1994. By reason of his service, which began after 1 January 1974, Judge Wells was eligible for retirement benefits in accordance with the provisions of Article 4 of Chapter 135. On 20 August 1984, the date Judge Wells became fully vested for retirement purposes, the Act under which his retirement benefits were determined provided that "[i]n the event that a retired former member should at any time return to *service as a justice or judge*, his retirement allowance shall thereupon cease and he shall be restored as a member of *the Retirement System*." 1973 Sess. Laws ch. 640, § 1 (emphasis added). The Act then defined "Retirement System," as "the 'Uniform [now, Consolidated] Judicial Retirement System' of North Carolina, as established in this Article." *Id.* Thus, had Judge Wells returned to service as a justice or judge in North Carolina following his retirement, he would have resumed both his membership and contributions to the Judicial Retirement System, and his retirement allowance would have ceased.

Judge Wells did not, however, return to employment as a judge, but was appointed Chairman of the North Carolina Utilities Commission. In that position, he became a member of the Teachers' and State Employees' Retirement System of North Carolina (TSERS), a retirement system created by the General Assembly in 1941 to provide "retirement allowances and other benefits . . . for teachers and State employees . . . ." N.C. Gen. Stat. § 135-2. Statutory provisions relating to TSERS are codified in Article 1 of Chapter 135 of the General Statutes. At the time Judge Wells became vested in the Judicial Retirement System, Article 1 provided in part that "[s]hould

a beneficiary who retired on an early or service retirement allowance be restored to service for a period of time exceeding six calendar months, his retirement allowance shall cease, he shall again become a member of the Retirement System and he shall contribute thereafter at the uniform contribution rate payable by all members." 1983 Sess. Laws ch. 556, § 1(c). The 1983 amendment set out above was effective on 17 June 1983, and was codified as N.C. Gen. Stat. § 135-3(8)(c) [now N.C. Gen. Stat. § 135-3(8)(d) (1999)]. The Board erroneously applied the "restored to service" provisions of N.C. Gen. Stat. § 135-3(8)(c) to Judge Wells, and stopped the vested payments due him under the provisions of the Judicial Retirement Act during the period he served on the Utilities Commission.

The Board erred in its construction of the applicable statutory provisions for several reasons. First, by its plain language, N.C. Gen. Stat. § 135-3(8)(c) referred to a person being "restored" to "service". The common definition of "restored" is "[t]o put (someone) back in a former position." The American Heritage College Dictionary (3d Edition). Second, "service" is defined in N.C. Gen. Stat. § 135-1(23) as "service as a teacher or State employee . . . ." A judge is obviously not a "teacher" as defined in N.C. Gen. Stat. § 135-1(25) nor an "employee" as defined in N.C. Gen. Stat. § 135-1(10). Significantly, N.C. Gen. Stat. § 135-1(10) specifically provides that "the term 'employee' shall not include any person who is a member of the Consolidated Judicial Retirement System . . . ." *Id.* Even more significantly, the General Assembly amended N.C. Gen. Stat. § 135-1(10) to exclude any member of the judicial retirement system from the definition of "employee" in the same legislation by which it established the Judicial Retirement System [Chapter 640 of the 1973 Session Laws]. 1973 Sess. Laws ch. 640, § 2.

In Chapter 640, the amendment to the definition of "employee" in Article 1 immediately follows the "restored to service" provision of Article 4 relating to justices and judges, and makes it clear that the legislature not only intended to remove justices and judges from the definition of "employee" in N.C. Gen. Stat. § 135-1(10), but also from the "restored to service" provisions of Article 1 of Chapter 135, as now found in N.C. Gen. Stat. § 135-3(8)(d). Having been neither a state employee nor a teacher prior to his appointment to the Utilities Commission, Judge Wells could not be *restored* to his "former position." Yet the Board specifically relied on the language of N.C. Gen. Stat. § 135-3(8)(c), now N.C. Gen. Stat. § 135-3(8)(d), in denying benefits to Judge Wells.

The Board argues that the provisions of N.C. Gen. Stat. § 135-3(8)(d) apply to Judge Wells, and other persons similarly situated, by reason of N.C. Gen. Stat. § 135-52, as codified in Article 4 (Consolidated Judicial Retirement Act). The statute reads:

### § 135-52. Application of Article 1; administration.

(a) References in Article 1 of this Chapter to the provisions of "this Chapter" shall not necessarily apply to this Article. However, *except as otherwise provided in this Article,* the provisions of Article 1 are applicable and shall apply to and govern *the administration of the Retirement System* established hereby. Not in limitation of the foregoing, the provisions of G.S. 135-5(h), 135-5(n), 135-9, 135-10, 135-12 and 135-17 are specifically applicable to the Retirement System established hereby.

(b) The provisions of this Article shall be *administered* by the Board of Trustees of the Teachers' and State Employees' Retirement System.

*Id.* (emphasis added); 1973 Sess. Laws ch. 640, § 1. This provision clearly does not support the interpretation of the Board. First, by its plain language it relates primarily to the *administration* of both retirement systems, the Uniform [now, Consolidated] Judicial Retirement System and The Teachers and State Employees' Retirement System, by the same Board of Trustees. The General Assembly wisely set out in N.C. Gen. Stat. § 135-52 six specific statutory provisions to be certain that they were applied to both systems. It would have been a simple matter for the General Assembly to include specifically the provisions of N.C. Gen. Stat. § 135-3(8)(c), now (d), in N.C. Gen. Stat. § 135-52 if it wanted the provision to apply to judges, and it is significant that the Assembly did not do so. Second, and even more persuasive, N.C. Gen. Stat. § 135-52 provides that the provisions of Article 1 apply "except as otherwise provided in this Article [4]." As set out above, the legislature included a specific "restoration to service" provision in N.C. Gen. Stat. § 135-71, and made that provision applicable to justices and judges who were members of the Judicial Retirement System. If the legislature intended that the "restored to service" provisions now contained in Article 1 of Chapter 135, and codified as N.C. Gen. Stat. § 135-3(8)(d), also apply to judges and other members of the Judicial Retirement System, then why enact N.C. Gen. Stat. § 135-71 at all? We may assume that our legislature did not perform a meaningless act in doing so. "It is always presumed that the legislature acted with care and deliberation and

with full knowledge of prior and existing law." *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) (citations omitted).

Further, if we give N.C. Gen. Stat. § 135-52 the broad reading for which the Board argues, we render the specific provisions of N.C. Gen. Stat. § 135-71 nugatory, in violation of our accepted principles of statutory construction. As a general rule, two statutory provisions dealing with the same subject matter should be read together and harmonized, if possible; where they cannot be harmonized, however, the more specific provision controls over the more general provision, and the later enactment generally controls over an earlier statute. *See Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966); *State v. Hutson*, 10 N.C. App. 653, 657, 179 S.E.2d 858, 861 (1971). Here, the Board argues that N.C. Gen. Stat. § 135-3(8)(d) is a general statute dealing with the restoration to service of any person entitled to retirement benefits under either the TSERS or the CJRS. N.C. Gen. Stat. § 135-71, by its very terms, is a restoration to service statute *specifically* directed at members of the Judicial Retirement System who return to service in a position included in the Act.

This decision does not result in a "windfall" to Judge Wells. During the period in question, he was a member of TSERS and was making contributions as required by law. Further, he was undoubtedly taxed by the state and federal governments on his earnings as Chairman of the Utilities Commission, and was subject to other lawful deductions from his salary. It does not offend public policy to allow him also to receive vested retirement benefits to which he was entitled from another retirement system during the same period of time.

The commonality of administration and the relative proximity of Articles 1 and 4 of Chapter 135 apparently contributed to the erroneous conclusion reached by the able trial court. There being no question of material fact, the plaintiff, Judge Hugh A. Wells, is entitled to entry of summary judgment in his favor. In light of my conclusion, I need not consider the serious constitutional question which also arises on these facts.

I respectfully dissent from the majority opinion, and vote to reverse the judgment of the trial court.