IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-206

 No. COA21-60

 Filed 5 April 2022

 Wake County, No. 19 CVS 00816

 DEBORAH SINK MOSS and CARLA SHUFORD, on behalf of themselves and others
 similarly situated, Plaintiffs,

 v.

 N.C. DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS
 DIVISION, Defendant.

 Appeal by Plaintiffs from orders entered 9 July 2020 by Judge Paul C.

 Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 6 October

 2021.

 Zaytoun Ballew & Taylor, PLLC, by John R. Taylor, Robert E. Zaytoun and
 Clare F. Kurdys, for Plaintiffs-Appellants.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Katherine A. Murphy, for Defendant-Appellee.

 WOOD, Judge.

¶1 Deborah Sink Moss and Carla Shuford (collectively, “Plaintiffs”) appeal from

 orders entered on July 9, 2020, 1) granting Defendant’s motion to dismiss and 2)

 affirming the administrative law judge’s final decisions. On appeal, Plaintiffs allege

 the trial court erred by granting Defendant’s motion to dismiss and denying their
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 petition for judicial review. After a careful review of the record and applicable law,

 we affirm the orders of the trial court.

 I. Factual and Procedural Background

¶2 When Plaintiff Shuford was 15 years old she was diagnosed with osteogenic

 sarcoma and a tumor in her left leg. As a result, her left leg was amputated. On

 March 8, 1982, Plaintiff Shuford began working in an administrative position at the

 University of North Carolina. While at the University of North Carolina, Plaintiff

 Shuford was hospitalized due to post-traumatic stress issues relating to the loss of

 her leg and her physical disabilities. On August 23, 1988, she applied for short-term

 disability and received approval shortly thereafter. On June 15, 1989, Plaintiff

 Shuford applied for long-term disability and was approved for long-term disability

 benefits retroactive to August 15, 1988.

¶3 On August 18, 1986, Plaintiff Moss worked as a teacher for the Wake County

 Public School Systems. Plaintiff Moss was given credit for 10 years of prior work

 experience. From November 1988 to December 1989, Plaintiff Moss was in three

 separate automobile accidents which resulted in injuries that caused her to

 experience pain while teaching. Subsequently, Plaintiff Moss was diagnosed with

 depression and stress from these car accidents. On April 17, 1990, she applied for

 short-term disability and was approved shortly thereafter. She then applied for long-
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 term disability benefits on April 21, 1991 and was approved on June 11, 1991.

¶4 Each Plaintiff receives Transitional Disability Benefits from the North

 Carolina Department of State Treasurer, Retirement Systems Division

 (“Defendant”). Under the terms of North Carolina’s Transitional Disability Benefits,

 disability payments are reduced by the gross amount of Social Security Disability

 benefits to which a person is entitled. As Social Security Disability benefits increase

 due to cost of living adjustments, the Plaintiffs’ disability payments from Defendant

 are reduced accordingly.

¶5 In 2017, Defendant discovered a programming error which failed to account for

 cost of living increases to Plaintiffs’ Social Security benefits. As a result, Defendant’s

 payments of benefits to individuals within the transitional disability group had been

 overpaid since 2006. Following this discovery, Defendant calculated the amount

 Plaintiffs should have received and accordingly reduced Plaintiffs’ monthly benefit

 payment amounts to offset the previously overpaid amount.

¶6 In 2017, Defendant informed Plaintiff Moss that she owed $13,235.00 in

 overpayments and informed Plaintiff Shuford that she owed $19,702.00 in

 overpayments. Defendant then reduced the amounts of Plaintiffs’ monthly disability

 benefits in order to recoup the overpayments.

¶7 Plaintiffs Moss and Shuford each filed a petition with the Office of

 Administrative Hearings (“OAH”) in December 2017, challenging the reduction in
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 their disability payments. Due to similar facts and legal issues, Plaintiffs’ cases were

 consolidated on January 2, 2018. The OAH held separate hearings for each Plaintiff.

¶8 On October 9, 2018, Plaintiff Moss’s case was heard by the administrative law

 judge, and on October 9 and 15, 2018, Plaintiff Shuford’s case was heard by the

 administrative law judge. At the hearing, Plaintiff Shuford offered her bank account

 statements and a spreadsheet as evidence of Defendant’s miscalculation of her

 benefits. At the conclusion of each hearing, Defendant made a Rule 41(b) motion for

 involuntary dismissal after the evidence was presented for Plaintiff Moss and

 Plaintiff Shuford.

¶9 On December 17, 2018, the administrative law judge issued final decisions in

 favor of Defendant and dismissed Plaintiffs’ cases with prejudice. Although Plaintiff

 Shuford had proffered her bank account statements at her hearing, the

 administrative law judge found they were “insufficient evidence to prove that her

 gross . . . [Social Security] Benefits differed from Respondent’s accounting.” The

 administrative law judge further held that disability benefit overpayments were

 State property, not Plaintiffs’ personal property. The administrative law judge

 concluded Plaintiffs (1) offered insufficient evidence to prove that the overpayment

 calculations were incorrect; (2) knew Social Security disability payments were to be

 deducted from their payments under the Transitional Disability Benefits; and (3)

 failed to prove Defendant substantially prejudiced their rights.
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

¶ 10 On January 16, 2019, Plaintiffs filed petitions in Wake County Superior Court

 for judicial review of the OAH Decisions, asserting both errors of law and fact.

 Defendant filed a motion to dismiss. On July 9, 2020, the Superior Court entered an

 order granting Defendant’s motion to dismiss and entered another order affirming

 the OAH Decisions. From entry of these two orders, Plaintiffs now appeal.

 II. Discussion

¶ 11 Plaintiffs raise multiple issues on appeal; each will be addressed in turn.

 A. Motion to Dismiss

¶ 12 Plaintiffs first argue the trial court erred by granting Defendant’s motion to

 dismiss because Plaintiffs had established valid claims for breach of contract. We

 disagree.

¶ 13 We begin our review by noting a motion to dismiss is reviewed de novo.

 Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 448, 781 S.E.2d 1,

 8 (2015); Holton v. Holton, 258 N.C. App. 408, 414, 813 S.E.2d 649, 654 (2018). Here,

 the Superior Court granted Defendant’s motion to dismiss under both Rule 12(b)(1)

 and 12(b)(6).

 1. 12(b)(6) Motion

¶ 14 Turning first to Rule 12(b)(6), a Rule 12(b)(6) motion to dismiss “tests the legal

 sufficiency of the complaint . . . .” Isenhour v. Hutto, 350 N.C. 601, 604, 517 S.E.2d

 121, 124 (1999) (quoting Forsyth v. Memorial Hosp. v. Armstrong World Indus., 336
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 N.C. 438, 442, 444 S.E.2d 423, 425 (1994)). “When reviewing the denial of a motion

 to dismiss pursuant to Rule 12(b)(6), the factual allegations in plaintiff’s complaint

 are treated as true.” Id. (citing Cage v. Colonial Bldg. Co., 337 N.C. 682, 683, 448

 S.E.2d 115, 116 (1994)).

¶ 15 A Rule 12(b)(6) motion reviews whether “as a matter of law, the allegations of

 the complaint, treated as true, are sufficient to state a claim upon which relief can be

 granted under some [recognized] legal theory.” Forsyth Memorial Hosp., 336 N.C. at

 442, 444 S.E.2d at 425-26 (citation omitted). See Lynn v. Overlook Dev., 328 N.C. 689,

 692, 403 S.E.2d 469, 471 (1991). “The complaint must be liberally construed, and the

 court should not dismiss the complaint unless it appears beyond a doubt that the

 plaintiff could not prove any set of facts to support his claim which would entitle him

 to relief.” Block v. County of Person, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419,

 (2000). See also Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 218, 367 S.E.2d 647,

 649 (1988) (“A claim should be dismissed under Rule 12(b)(6) where it appears that

 the plaintiff is entitled to no relief under any statement of facts which could be

 proven.”).

¶ 16 Turning to Plaintiff’s argument that they had established valid claims for

 breach of contract, the elements for a breach of contract claim are the existence of a

 valid contract and a breach of the terms therein. Supplee v. Miller-Motte Bus. Coll.,

 Inc., 239 N.C. App. 208, 216, 768 S.E.2d 582, 590 (2015); see Poor v. Hill, 138 N.C.
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 App. 19, 26, 530 S.E.2d 838, 843 (2000).

¶ 17 The relationship between State employees and the long-term disability system

 is contractual in nature. See Wells v. Consolidated Judicial Retirement Sys., 136 N.C.

 App. 671, 673, 526 S.E.2d 486, 488 (2000). The long-term disability system is

 governed by Article 6 Chapter 135 of the North Carolina General Statutes. N.C. Gen.

 Stat. § 135-100(a) (2021). Chapter 135 was enacted in 1987 and became effective on

 January 1, 1988. An Act to Make Appropriations for Current Operations of State

 Departments, Institutions, and Agencies, and For Other Purposes Except For Aid to

 Certain Governmental and Nongovernmental Units, ch. 738, § 29(r), 1987 N.C.

 Session Laws 1354, 1392. The contractual right to long-term disability benefits vests

 after “five or more years of membership service.” N.C. Gen. Stat. § 135-106(a) (1988).

 However, a transitional provision provides an opportunity for employees who were

 employed at the time of Chapter 135’s enactment to receive disability benefits despite

 having less than five years of membership service:

 Any participant in service as of the date of ratification of
 this Article and who becomes disabled after one year of
 membership service will be eligible for all benefits provided
 under this Article notwithstanding the requirement of five
 years’ membership service to receive the long-term benefit;
 provided, however, any beneficiary who receive[s] benefits
 as a result of this transition provision before completing
 five years of membership service shall receive lifetime
 benefits in lieu of service accruals under the Retirement
 System as otherwise provided in [N.C.] G[en]. S[tat]. [§]
 135-4(y).
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 N.C. Gen. Stat. § 135-112(a) (1988).

¶ 18 Here, Plaintiffs were both employed as teachers for the State for at least one

 year, and thus, Plaintiffs qualified for long-term disability benefits. To the extent

 Plaintiffs and Defendant differ as to whether Plaintiffs were vested beneficiaries of

 the Teachers’ & State Employees’ Retirement System, or only in the transitional

 disability group per Section 135-112(a), we need not reach the merits of this

 argument. In the case sub judice, Plaintiffs only challenge Defendant’s right to

 recoup disability benefits. Thus, whether Plaintiffs were vested beneficiaries or not,

 Plaintiffs were still eligible for, and indeed received, disability payments under

 Chapter 135. These disability payments, in turn, are governed by the statutory

 requirements within Chapter 135. See Wells, 136 N.C. App. at 673, 526 S.E.2d at

 488.

¶ 19 Under N.C. Gen. Stat. § 135-106(b), the amount of long-term disability benefits

 received were supposed to be offset dollar-for-dollar by the Social Security Disability

 benefit for which Plaintiffs would otherwise be eligible. N.C. Gen. Stat. § 106(b)

 (1988). Additionally, each contract contained a recoupment provision pursuant to

 N.C. Gen. Stat § 135-9. When Chapter 135 became effective in 1988, Section 135-9(b)

 stated

 [n]otwithstanding any provisions to the contrary, any
 overpayment of benefits to a member in a state-
 administered retirement system or the former Disability
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 Salary Continuation Plan or the Disability Income Plan of
 North Carolina may be offset against any retirement
 allowance, return of contributions or any other right
 accruing under this Chapter to the same person, the
 person’s estate, or designated beneficiary.

 N.C. Gen. Stat. § 135-9(b) (1988) (emphasis added). See N.C. Gen. Stat. § 143-

 64.80(a). At the time of Plaintiffs’ hearings in 2018, our General Assembly had

 amended the language of Section 135-9(b) so that it read,

 [n]otwithstanding any provisions to the contrary, any
 overpayment of benefits or erroneous payments to a member
 in a State-administered retirement system or the former
 Disability Salary Continuation Plan or the Disability
 Income Plan of North Carolina, including any benefits paid
 to, or State Health Plan premiums or claims paid on behalf
 of, any member or beneficiary who is later determined to
 have been ineligible for those benefits or unentitled to
 those amounts, may be offset against any retirement
 allowance, return of contributions or any other right
 accruing under this Chapter to the same person, the
 person’s estate, or designated beneficiary.

 N.C. Gen. Stat. § 135-9(b) (2018) (emphasis added).

¶ 20 Moreover, the State has a duty under Section 143-64.80 to pursue the

 recoupment of any overpayment: “No State department, agency, or institution, or

 other State-funded entity may forgive repayment of an overpayment of State funds,

 but shall have a duty to pursue the repayment of State funds by all lawful means

 available, including the filing of a civil action in the General Court of Justice.” N.C.

 Gen. Stat. § 143-64.80(b) (2018). The plain language of Section 135-9 in both 1988
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 and 2018 required the State to recoup any overpayments resulting from disability

 payments. In other words, the statutory terms of Plaintiff Moss and Plaintiff

 Shuford’s right to receive disability payments included a recoupment clause which

 mandated Defendant to seek reimbursement from any overpayment.

¶ 21 Although we sympathize with the financial difficulties faced by Plaintiffs due

 to Defendant’s error, Plaintiffs’ statutory right to disability benefits also mandates

 the Defendant to seek recoupment of overpayments. See N.C. Gen. Stat. § 135-9(b)

 (2018). Plaintiffs’ argument that Defendant’s lawful action under the terms of

 Chapter 135 constitutes a breach of contract fails because Defendant had “a duty to

 pursue the repayment of State funds by all lawful means available.” § 143-64.80(b).

 Therefore, we hold the trial court did not err by granting Defendant’s motions to

 dismiss.

 2. 12(b)(1) Motion

¶ 22 Plaintiffs next argue the trial court erred by granting Defendant’s motion to

 dismiss under Rule 12(b)(1). A trial court grants a motion to dismiss pursuant to

 Rule 12(b)(1) when the court lacks jurisdiction over a subject matter. N.C. Gen. Stat.

 § 1A-1, Rule 12(b)(1) (2021). A party, or the court on its own, may assert lack of

 jurisdiction. Dale v. Lattimore, 12 N.C. App. 348, 352, 183 S.E.2d 417, 419 (1971).

 “The filing of a motion to dismiss under Rule 12(b)(1) does not raise an issue of fact[,]

 [i]t challenges the jurisdiction of the court over the subject matter.” Journeys
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 International, Inc. v. Corbett, 53 N.C. App. 124, 125, 280 S.E.2d 5, 6 (1981). A Rule

 12(b)(1) motion may not be viewed in the same manner as a Rule 12(b)(6) motion

 because under Rule 12(b)(1) “matters outside the pleadings[] . . . may be considered

 and weighed by the court in determining the existence of jurisdiction over the subject

 matter.” Tart v. Walker, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).

¶ 23 Here, Plaintiffs specifically contend that Defendant waived the defense of

 sovereign immunity when it entered into a contract with Plaintiffs. See Guthrie v.

 North Carolina State Ports Authority, 307 N.C. 522, 535, 299 S.E.2d 618, 625 (1983)

 (“Sovereign immunity is a legal principle which states in its broadest terms that the

 sovereign will not be subject to any form of judicial action without its express

 consent.”). However, because the trial court properly granted Defendant’s motion to

 dismiss under 12(b)(6) we need not address Plaintiffs’ argument regarding 12(b)(1).

 B. Plaintiffs’ Petition for Judicial Review

¶ 24 Next, Plaintiffs contend the trial court erred by affirming the administrative

 law judge’s decisions. “When the trial court exercises judicial review over an agency’s

 final decision, it acts in the capacity of an appellate court.” N.C. Dep’t of Env’t &

 Natural Res. v. Carroll, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004) (first citing

 Mann v. Media, Inc. v. Randolph County Planning Bd., 356 N.C. 1, 12, 565 S.E.2d 9,

 17 (2002); and then citing Avant v. Sanhills Ctr. For Mental Health, Development

 Disabilities & Substances Abuse Servs., 132 N.C. App. 542, 545, 513 S.E.2d 79, 82
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 (1999)).

¶ 25 Under N.C. Gen. Stat. § 150B-51, the reviewing court may affirm or remand a

 final decision. N.C. Gen. Stat. § 150B-51(b) (2021). The reviewing court may also

 “reverse or modify the decision if the substantial rights of the petitioners may have

 been prejudiced because the findings, inferences, conclusions, or decisions are:” 1) A

 “violation of constitutional provisions”; 2) an “excess of the statutory authority or

 jurisdiction of the agency or administrative judge”; 3) an “unlawful procedure”; or 4)

 “[a]ffected by other error of law . . . .” § 150B-51(b)(1)-(4). If a petitioner alleges any

 of the above has been violated, the reviewing court must apply a de novo standard of

 review. § 150B-51(c). However, if a reviewing court is determining whether the

 findings, inferences, conclusions, or decisions are “[u]nsupported by substantial

 evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire

 record as submitted” or “[a]rbitrary, capricious, or an abuse of discretion,” a whole

 record standard of review is to be applied. § 150B-51(b)(5)-(6), (c).

¶ 26 When this Court reviews an appeal from a superior court which either affirmed

 or reversed an administrative agency’s decision, we review for two factors: “(1)

 whether the superior court applied the appropriate standard of review and, if so, (2)

 whether the superior court properly applied this standard.” Mayo v. N.C. State Univ.,

 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (2005) (citing In re Appeal by McCrary,

 112 N.C. App. 161, 166, 435 S.E.2d 359, 363 (1993), aff’d, 360 N.C. 52, 619 S.E.2d 502
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 (2005).

 1. Bank Account Statements

¶ 27 Plaintiffs initially allege the administrative law judge’s decisions are not

 supported by competent evidence because they did not consider Plaintiff Shuford’s

 financial records. Plaintiffs argue that the financial records provided by Plaintiff

 Shuford were conclusive to show the State’s mathematical calculations used to

 withhold Plaintiffs’ disability statements were incorrect. Since Plaintiffs allege the

 decisions were not supported by substantial evidence, the trial court was required to

 apply a whole record standard of review. See § 150B-51(c). The trial court

 appropriately applied such standard, stating “[w]ith respect to assertions of fact-

 based errors, the Court has applied a whole record standard of review.” Thus, we

 conclude the trial court did not err in its standard of review.

¶ 28 Next, we examine whether the trial court applied the whole record standard of

 review correctly. The whole record test “requires the examination of all competent

 evidence to determine if the administrative agency’s decision is supported by

 substantial evidence.” Rector v. North Carolina Sheriffs’ Educ. & Training

 Standards Com., 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991) (citing

 Henderson v. N.C. Dep’t of Human Resources, 91 N.C. App. 527, 530, 372 S.E.2d, 887,

 889 (1988)). Substantial evidence is relevant evidence “a reasonable mind might

 accept as adequate to support a conclusion.” Avant v. Sandhills Ctr. for Mental
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 Health, Developmental Disabilities & Substance Abuse Servs., 132 N.C. App. 542, 546,

 513 S.E.2d 79, 83 (1999) (quoting Lackey v. N.C. Dep’t of Human Resources, etc., 306

 N.C. 231, 238, 293 S.E.2d 171, 176 (1982)). Notably, the whole record test is not a

 “tool of judicial intrusion; instead, it merely gives a reviewing court the capability to

 determine whether an administrative decision has a rational basis in the evidence.”

 In re Rogers, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979). Even if the record contains

 evidence contrary to an agency’s findings, an appellate court may not substitute its

 judgment in lieu of the agency’s judgment. Avant, 132 N.C. App. at 547, 513 S.E.2d

 at 83.

¶ 29 Applying the whole record standard of review, we consider the following

 evidence. Plaintiff Shuford offered her bank account statements and a spreadsheet

 into evidence. Plaintiff Shuford’s spreadsheet showed the amount of social security

 payments deposited into her bank account, amount of disability payments deposited

 into her bank account, benefits paid by the state, social security offset amount

 calculated by the state, benefit amount the state should have paid, and social security

 offset amount the state should have paid from January 2006 until July 2017.

 Defendant also provided a spreadsheet detailing the amount it actually paid Plaintiff

 Shuford versus the amount it should have paid. The social security offset amount on

 Plaintiff Shuford’s spreadsheet differed from the social security offset amount on the

 spreadsheet prepared by Defendant. For instance, Plaintiff Shuford’s spreadsheet
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 showed the social security offset amount for December 2006 was $1,056.00, while

 Defendant’s spreadsheet showed Plaintiff Shuford’s social security offset amount for

 the same date was $1,090.00.

¶ 30 These discrepancies are not due to a calculation error by Defendant, but rather

 are indicative of potential withholdings. Thomas Causey, a witness on behalf of

 Defendant, testified the social security offset amount illustrated on Plaintiff

 Shuford’s spreadsheet statements does not consider potential money withheld by the

 Social Security Administration. Causey further testified that “Social Security has

 other deductions that they take out before . . . direct deposits are made for members.

 . . . So . . . the direct deposits, again, would not help us to know the amount that

 should be deducted.” In other words, the amount of social security offset in Plaintiff

 Shuford’s spreadsheet shows only the net amount of her social security benefits if

 money was withheld, not the gross amount of the benefits. The social security offset

 amount in Defendant’s spreadsheet showed the gross amount of social security

 benefits received by Plaintiff Shuford prior to any withholdings. As a result, if the

 Social Security Administration was withholding money from the gross amount

 provided to an individual, this would be reflected in a lower amount being deposited

 into the individual’s bank account. Nowhere within the record did Plaintiff Shuford

 offer evidence of the gross amount she received from the Social Security

 Administration, only proffering evidence as to the net amount. Therefore, the
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 administrative law judge had substantial evidence from Defendant’s spreadsheet to

 support its decisions.

¶ 31 Assuming arguendo Plaintiff Shuford’s spreadsheet sufficed as contrary

 evidence for the purpose of calculating the overpayment amount, we are not

 permitted to substitute our judgment for that of the administrative law judge just

 because contrary evidence existed. See id.; see also City of Rockingham v. N.C. Dep’t

 of Env’t & Natural Res., 224 N.C. App. 228, 239, 736 S.E.2d 764, 771 (2012) (“In an

 administrative proceeding, it is the prerogative and duty of that administrative body,

 once all the evidence has been presented and considered, to determine the weight and

 sufficiency of the evidence and the credibility of the witnesses, to draw inferences

 from the facts, and to appraise conflicting and circumstantial evidence.” (internal

 quotation marks omitted)). In light of the foregoing findings, we hold substantial

 evidence existed regarding the financial records to support the administrative law

 judge’s decisions.

 2. Cost of Living Adjustments

¶ 32 Plaintiffs also contend the administrative law judge erred by not considering

 Defendant’s possible overpayments in the years when the Social Security

 Administration did not increase benefits due to a cost of living adjustments (“COLA”).

 Because Plaintiffs challenge whether findings of fact within the decisions were

 supported by substantial evidence, the trial court was required to apply a whole
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 record standard of review. See § 150B-51(c). The trial court appropriately applied

 such standard, stating “[w]ith respect to assertions of fact-based errors, the Court has

 applied a whole record standard of review.” Therefore, we must analyze whether the

 trial court appropriately applied the whole record standard of review.

¶ 33 In this case, the administrative law judge made the following relevant findings

 of fact:

 35. Because ORBIT had not been programmed to deduct
 the cost-of-living adjustments from the Transitional
 Benefit accounts, Petitioner Moss’[s] Transitional
 Disability Benefits had not been reduced by the Social
 Security cost-of-living adjustment increases which
 occurred in the years of 2006, 2007, 2008, 2011, 2012, 2013,
 2014, and 2016.

 ...

 56. Subsequently, on June 16, 2017, Respondent notified
 Petitioner Shuford that Social Security cost-of-living
 adjustments had been given in 2006, 2007, 2008, 2011,
 2012, 2013, 2014, and 2016, but that these cost-of-living
 adjustments had not been deducted from Shuford’s
 Transitional Disability Benefits.

 In 2009, 2010, and 2015, no COLA was awarded, and thus, the Social Security

 Administration did not increase its benefits. A careful review of Defendant’s “should

 have paid” spreadsheets for each Plaintiff reveals Defendant did not increase the

 amounts of their social security benefits in the years when no COLA was granted. In

 the administrative law judge’s findings, she omitted the years 2009, 2010, and 2015,

 the same years COLA was not awarded. Accordingly, we hold the administrative law
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 judge considered Defendant’s possible overpayments to Plaintiffs in the years COLA

 was not awarded and substantial evidence supported her findings.

 3. Breach of Contract

¶ 34 Finally, Plaintiffs contend the trial court erred by denying their petition for

 judicial review because the administrative law judge did not consider their

 contractual rights to receive disability benefits. We disagree.

¶ 35 As explained above, Plaintiffs’ rights to disability payments were subject to

 Chapter 135’s statutory requirements. These requirements, in turn, contained a

 mandatory recoupment clause pursuant to N.C. Gen. Stat. § 135-9(b). Thus, by

 accepting disability benefits, Plaintiffs agreed Defendant would recoup any

 overpayments of benefits to them. Furthermore, a careful review of the

 administrative law judge’s decisions shows she properly considered the mandatory

 recoupment clause inherent to Plaintiffs’ disability benefits. Therefore, substantial

 evidence existed to support the administrative law judge’s conclusions Defendant

 acted within its statutory duty to recoup overpayments made to Plaintiffs, and

 Plaintiffs’ argument is without merit.

 C. Collateral Estoppel

¶ 36 Although Defendant crafted a lengthy argument as to why Plaintiffs are barred

 from pursuing their claims in superior court under the doctrine of collateral estoppel,

 collateral estoppel is an affirmative defense under Rule 8 and thus must have been
 MOSS V. N.C. DEP’T OF STATE TREASURER

 2022-NCCOA-206

 Opinion of the Court

 raised in the trial court in order to preserve this argument for appeal. N.C. Gen. Stat.

 § 1A-1, Rule 8(c) (2021); N.C. R. App. P. 10(a)(1). “Failure to plead an affirmative

 defense ordinarily results in waiver of the defense.” Ward v. Beaton, 141 N.C. App.

 44, 49, 539 S.E.2d 30, 34 (2000). Defendant raised the affirmative defense of

 collateral estoppel for the first time on appeal, and thus failed to preserve this issue

 for appeal. See also In re D.R.S., 181 N.C. App. 136, 140, 638 S.E.2d 626, 628 (2007)

 (since “respondent raise[d] the defenses of collateral estoppel and res judicata for the

 first time on appeal, . . . [respondent] thus failed to properly preserve the issue[]”).

 III. Conclusion

¶ 37 For the foregoing reasons, the trial court did not err by granting Defendant’s

 motion to dismiss. Additionally, the trial court did not err by affirming the OAH

 Decisions entered by the administrative law judge. Accordingly, the orders of the

 trial court are affirmed.

 AFFIRMED.

 Judges ZACHARY and CARPENTER concur.